IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **JELILI QUDUS,** § | |
|     **Petitioner,** § | |
| § | |
| v. § | EP-25-CV-00679-DB |
| § | |
| **KRISTI NOEM,** *in her official capacity as* § | |
| *Secretary of Department of Homeland* § | |
| *Security, et al.,* § | |
|     **Respondents.** § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Petitioner Jelili Qudus' ("Petitioner") "Emergency Petition for Writ of Habeas Corpus" ("Petition"), filed on December 17, 2025, ECF No.[1] 1. After due consideration, and for the reasons stated herein, the Petition is granted. Respondents are hereby ordered to immediately release Petitioner from custody subject to reasonable conditions of supervision. The parties must notify the Court of the status of Petitioner's release by January 23, 2026.

## BACKGROUND

This case involves Petitioner's challenge to Respondents' decision to detain him without notice nor an opportunity to respond after he was released pursuant to an Order of Supervision ("OSUP") for over seventeen years. ECF No. 1 at 2. Petitioner is a Nigerian national who entered the United States in 1992. *Id.* at 6. He has resided in the Chicago area for over thirty-three years and is father to four U.S. citizen children. *Id.* In 2019, Petitioner's eldest daughter, filed an I-130

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in this matter. When a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the page numbers assigned by the ECF system.

petition on his behalf. *Id.* at 7. However, due to a 1994 misdemeanor conviction, Petitioner has thus far been unable to adjust status. *Id.*

On November 16, 2001, an Immigration Judge ("IJ") ordered Petitioner removed. He did not appeal, and the order became administratively final that same day. *Id.* at 8. Petitioner's subsequent applications for relief were denied, and those decisions were upheld on appeal. ECF No. 4 at 2. However, for reasons unexplained, ICE was unable to remove Petitioner. *Id.* Petitioner was first detained on September 14, 2008. *Id.* On December 19, 2008, he was released pursuant to an OSUP under which he complied fully for more than seventeen years. *Id.*; ECF No. 1 at 8.

On October 23, 2025, Petitioner appeared for an annual check-in with ICE, accompanied for the first time by immigration counsel. ECF No. 1 at 8–9. When his attorney stepped away to attend to another client matter in the same building, ICE officers appeared and immediately arrested Petitioner without notice, explanation, or an opportunity to consult with his attorney. *Id.* at 9. To date, ICE has yet to communicate the reasons for revoking Petitioner's supervised release, nor has Petitioner been afforded an informal interview allowing him an opportunity to respond, as is required under 8 C.F.R. § 241. *Id.* at 10; *see also* ECF No. 4–1.

On December 17, 2025, Petitioner filed an "Emergency Petition for Writ of Habeas Corpus" challenging the legality of his detention and seeking an order of immediate release from ICE custody. ECF No. 1 at 22–24; ECF No. 8 at 8–9.  Pursuant to the Court's briefing schedule, Respondents filed their response, ECF No. 4, on December 30, 2025.

## **LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S.

CONST., Art. I, § 9, cl. 2). This includes immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner seeking habeas relief must demonstrate they are in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## ANALYSIS

Petitioner alleges the manner in which Respondents re-detained him on October 25, 2025, violated his due process rights protected by the Fifth Amendment. To be clear, the Court finds Petitioner has a core liberty interest in being free from bodily restraint without due process of law. In his Petition, Petitioner's due process claims are twofold. First, his substantive due process rights were violated because he is being detained without a reasonable foreseeability of removal. Second, his procedural due process rights were violated because he was re-detained without any notice or opportunity to challenge any allegations of changed circumstances – in clear violation of the constitutional minima promulgated in 8 C.F.R. § 241. ECF No. 1 at 22–23; ECF No. 8 at 8–9. As articulated herein, the Court finds Respondents failed to provide Petitioner any process whatsoever before his re-detention. Respondents did not follow their own regulations in 8 C.F.R. § 241, nor provide any constitutionally required alternative, thereby depriving Petitioner of his "liberty . . . without due process of law." U.S. CONST. amend V.

In their Response, Respondents fail to meaningfully address the procedural due process violations alleged by Petitioner. *See generally* ECF No. 4. Instead, Respondents dedicate the bulk of their Response to analyzing Petitioner's substantive due process rights under *Zadvydas v. Davis*,

533 U.S. 678 (2001).[2] The only procedural due process argument advanced by Respondents is that the Fifth Circuit has yet to "provide guidance to lower courts. . . on the appropriate standard for reviewing a procedural due process claim alleged by an alien detained under § 1231. . . ." *Id.* at 7. In the absence of such guidance, Respondents urge the Court to apply the *Zadvydas* framework to analyze § 1231 re-detention claims, which, according to Respondents, would render Petitioner's procedural due process claim premature. *Id.*

For the reasons stated herein, the Court declines to adopt the analytical approach urged by Respondents. Additionally, the Court finds that ICE's failure to follow its own procedures, which mandate notice and an opportunity respond, while re-detaining Petitioner constitutes a *per se* denial of due process. Accordingly, Respondents are ordered to immediately release Petitioner from custody subject to reasonable conditions of supervision.

A.     Procedural Due Process

Petitioner has shown ICE deprived him of due process by violating its own regulations. Respondents correctly point out that the Fifth Circuit has yet to consider the appropriate standard for reviewing a procedural due process challenge alleged by a noncitizen detained under § 1231. However, it has held, under distinguishable facts, that an agency's "[f]ailure to adhere to regulations can constitute a denial of due process of law." *Arzanipour v. I.N.S.*, 866 F.2d 743, 746 (5th Cir. 1989). Indeed, according to the Fifth Circuit, where an agency regulation is required by the Constitution or a statute, the failure of the agency to follow said regulation is a *per se* denial of due process. *Id.* (emphasis added). As such, the Court declines to adopt the analytical approach

---

[2] Petitioner characterizes his second claim for relief as a substantive due process violation. But a closer reading of the Petition reveals that the claim is twofold and includes a procedural due process claim as well. *See* ECF No. 1 at 23–24.

urged by Respondents. Instead, the Court examines whether the procedures set forth in 8 C.F.R. § 241 are constitutionally required and, if so, whether Respondents violated said procedures.

    1.  *The procedures prescribed by 8 C.F.R. § 241 are required by the Constitution.*

The Court finds that the revocation procedures mandated by 8 C.F.R. § 241 implicate Petitioner's constitutional right to notice and opportunity to be heard and are therefore constitutionally required. It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (citation omitted). Pursuant to the Due Process Clause, the government is forbidden from depriving any "person . . . of life, liberty, or property, without due process of law." U.S. CONST. amend V. And although "[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause[,] . . . there can be no doubt that at a minimum they require that [such] deprivation[s]. . . be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 313 (1950). Therefore, it stands to reason that an agency regulation implicating a noncitizen's fundamental right to notice and opportunity to be heard "at a meaningful time and in a meaningful manner" is required by the Constitution. *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). 8 C.F.R. § 241 is one such regulation.

Section 1231 of the Immigration and Nationality Act ("INA") governs the detention, release, and removal of noncitizens subject to a final order of removal. *See* 8 U.S.C. § 1231(a). The statute directs the Attorney General to detain these individuals for 90 days while ICE effectuates their removal. *See* 8 U.S.C. §§ 1231(a)(1)(A), (2)(A). The 90-day removal period begins on the latest of three dates set forth in Paragraph (a)(1)(B)(i), including, as relevant here, "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). If

ICE cannot remove a noncitizen within the 90-day removal period, the noncitizen is released "subject to supervision under regulations prescribed by the Attorney General[,]" unless an exception applies. 8 U.S.C. §§ 1231(a)(3), (a)(6).

8 C.F.R. § 241 sets forth the procedures governing the supervised release of noncitizens subject to a final order of removal. There are two distinct provisions under which supervised release may be granted. *See* 8 C.F.R. §§ 241.4, .13. Continued detention or release of an alien during the post-removal period will generally be governed by 8 C.F.R. § 241.4. Section 241.4 permits the release of noncitizens that do not "pose a danger to the community. . . or a significant risk of flight pending [the noncitizen's] removal from the United States." 8 C.F.R. § 241.4(d)(1). As it pertains to the revocation supervised release, Section 241.4 provides:

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. . . . Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.
>
> (2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. . . . Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> > (i) The purposes of release have been served;
> >
> > (ii) The alien violates any condition of release;
> >
> > (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(*l*).[3]

Although Paragraph (*l*)(2) of this Section does not explicitly require notice or an interview, courts have interpreted § 241.4 to require both, regardless of whether the noncitizen's release was revoked for violation of a condition or pursuant to ICE's discretionary authority. *See, e.g.*, *Ceesay v. Kurzdorfer*, 781 F.Supp.3d 137, 164 (W.D.N.Y. 2025) (holding that consistent with the weight of authority, and ICE's own interpretation, the procedures set forth in Paragraph (*l*)(1) apply "regardless of whether or not release is revoked for a violation."); *Zhu v. Genalo*, 798 F.Supp.3d 400, 415 (S.D.N.Y. 2025) (holding that although the Government has significant discretion to revoke orders of supervision, it must do so consistent with the requirements § 241.4).

As it pertains to release pursuant to § 241.13, if, at any point during or after the § 241.4 custody review process, a noncitizen "submits, or the record contains, information providing a substantial reason to believe that the removal of a detained [noncitizen] is not significantly likely in the reasonably foreseeable future, [ICE] shall treat that as a request for review and initiate the review procedures under § 241.13." 8 C.F.R. § 241.4(i)(7). Pursuant to § 241.13, in cases where there is no "significant likelihood of removal" and "no special circumstances justifying continued detention," ICE "shall promptly make arrangements for the release of the [noncitizen] subject to appropriate conditions." 8 C.F.R. § 241.13(g)(1). As it pertains to the revocation of an order of supervised release, the regulation provides, in relevant part:

> (2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on

---

[3] To avoid confusion between the letter "l" and the number "1" in Times New Roman, the Court has italicized "*l*" throughout when referring to this paragraph of section 241.4.

> account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. . . .
>
> (3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. . . .

8 C.F.R. § 241.13(i).

It is evident to the Court, based on the text of 8 C.F.R. §§ 241.4(*l*) and 241.13(i), that the revocation procedures mandated under § 241 were "promulgated to protect a fundamental right derived from the Constitution" (i.e., notice and an opportunity to be heard). *Rombot v. Souza*, 296 F.Supp.3d 383, 388 (D. Mass. 2017). Therefore, adherence to said procedures is constitutionally required under the Fifth Amendment's Due Process Clause. This holding is bolstered by the decisions of numerous district courts across the country that have found ICE's non-compliance with the revocation procedures set forth in § 241 to violate due process. *See e.g.*, *Zhu v. Genalo*, 798 F.Supp.3d 400, 411, 414 (S.D.N.Y. 2025) (collecting cases and holding that ICE's failure to follow the revocation procedures set forth in 8 C.F.R. § 241.4(*l*) violated the Due Process Clause); *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *1–*2 (W.D. Okla. Nov. 20, 2025) (collecting cases and finding that ICE's violation of 8 C.F.R. § 241.13(i) violated due process).

   2. *Respondents failed to adhere to the revocation procedures set forth in 8 C.F.R. § 241 and therefore violated Petitioner's right to due process.*

Because the Court finds that the revocation procedures contained in 8 C.F.R. §§ 241.4 and 241.13 are constitutionally required, the Court now assesses whether Respondents violated said

procedures.[4] According to Petitioner, he was never issued a Notice of Revocation of Release outlining the reasons for revocation, nor provided an informal interview allowing him an opportunity to challenge the reasons for revocation. *See* ECF No. 1 at 9–10. Federal Respondents do not dispute these allegations. *See generally* ECF No. 4. As such, the Court finds that Respondents violated the procedures set forth in 8 C.F.R. § 241 while re-detaining Petitioner.

"The Government has significant discretion to enforce the immigration laws and, indeed, to revoke Petitioner's Order of Supervision." *Zhu*, 798 F.Supp.3d at 415. However, it must do so "consistent with the requirements of its own regulations and the Due Process Clause." *Id.* Respondents' failure to abide by the procedures set forth in 8 C.F.R. § 241 unequivocally violated Petitioner's constitutional right to notice and an opportunity to be heard – especially where there is no evidence Respondents provided any constitutionally required alternative. Accordingly, Respondents' actions constitute a denial of due process.

B.   Remedy

As to the appropriate remedy, Petitioner requests that he be immediately released from custody. ECF No. 1 at 24. For their part, Respondents argue that the appropriate remedy, if any, is "substitute process." ECF No. 4 at 8.

The Supreme Court has long instructed that habeas corpus relief must be applied with an eye toward "the ends of justice." *Sanders v. United States*, 373 U.S. 1, 12 (1963). Accordingly, district courts enjoy "broad discretion" in fashioning an appropriate remedy upon a grant of habeas

---

[4] Although it is unclear under what authority ICE revoked Petitioner's release, both Sections 241.4 and 241.13 require notice and an informal interview affording the noncitizen an opportunity to respond to the reasons for revocation. *See* 8 C.F.R. §§ 241.4(*l*)(1) and 241.13(i)(3). As such, it is immaterial to the Court's analysis which regulation applies.

corpus relief, and "possess [the] power to grant *any* form of relief necessary to satisfy the requirement of justice." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *Levy v. Dillon*, 415 F.2d 1263, 1265 (10th Cir. 1969) (emphasis added). Because Respondents' actions unequivocally offend "the ordered system of liberty that is the pillar of the Fifth Amendment[,]" the Court finds immediate release appropriate in this case. *Chipantiza-Sisalema v. Francis*, No. 25 CIV. 5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025). Further, considering multiple instances[5] where alleged inadvertent mistakes have caused this Court's orders to be violated, the Court issues an expedited timeline for compliance with the instant Order.

## CONCLUSION

For the reasons stated above, this Court determines Petitioner has established a violation of the Fifth Amendment's Due Process Clause. Accordingly, the following orders shall issue:

**IT IS HEREBY ORDERED** that Petitioner Jelili Qudus' "Emergency Petition for Writ of Habeas Corpus," ECF No. 1, is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents **SHALL IMMEDIATELY RELEASE** Petitioner from custody subject to reasonable conditions of supervision by **no later than January 21, 2026.**

---

[5] *See, e.g.*, *Blandon Raudez v. Bondi*, No. 3-25-CV-493-DB, (W.D. Tex. October 30, 2025)(removing Petitioner to Mexico nearly 14 hours after this Court issued an order not to remove him from the United States); *Pacay Garcia v. Unknown*, No. 3-25-CV-00591-DB, (W.D. Tex. December 9, 2025), "Advisory to the Court," ECF No. 8 (removing Petitioner from United States after an order not to remove was issued because, among other things, Respondents' counsel "inadvertently failed to forward the Order to Show Cause to ICE agency Counsel").

**IT IS FURTHER ORDERED** that the parties **SHALL CONFER AND FILE** a joint status report confirming Petitioner has been released and advising the Court whether any matters remain to be resolved in this case by **no later than January 23, 2026**,

**IT IS FINALLY ORDERED** Petitioner's "Emergency Motion for Immediate Release of Petitioner," ECF No. 5, is **DENIED AS MOOT.**

**SIGNED** this **20th** day of **January 2026**.

_____
THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE